Mr. Heap, you may proceed. Yes, you may. Good afternoon, Your Honors. May it please the Court, Counsel. Your Honors, my name is Robert Heap. I represent the Apollo Robert Cunningham, as has been indicated. I appreciate the opportunity to address you this afternoon. Mr. Cunningham was convicted of aggravated criminal sexual abuse, as you've seen in the briefs, in Whiteside County by Judge Steins after a bench trial. This matter was appealed alleging a number of issues, of which I'd like to address a few of them this afternoon. Not all of them, but a few. It's my belief that when looking at the case as a whole, you will agree that this matter needs reconsideration. Your Honor, very briefly, there are three issues that I'd like to address. One of them in a little more detail, but the other two I'll just kind of touch on because I believe that the briefs have gone into sufficient detail on them. But the first one I'd like to talk about is the fact of the possibility of recusal. As you've seen in the briefs, People v. Gilbert, I quote, The rule in Illinois and other jurisdictions is that it's improper for the trier of fact to conduct experiments or private investigations which have the effect of producing evidence which was not introduced at trial. Citing People v. Thunberg, where there a judge conducted a private interview of a witness.  And the case is Judge Stein's listened to Natalie Porter, who is the alleged victim in this case, at the application for an overhear. It was before the charge was ever filed. It wasn't a pre-hearing. It wasn't a preliminary hearing. It wasn't a pre-trial hearing. It wasn't a request for a warrant. It was strictly a request for an overhear, and it wasn't a situation where it was recorded for any reason. It wasn't a situation where it was transcribed. It wasn't a situation where there was a defense representative. It was a situation where the judge, and I cast no aspersions at all to Judge Stein. She was a very good judge. But I would assert that it was probably not the best move on his part to talk to, they brought her in, and talk to the alleged victim in the case. I think that goes beyond what he should have done. And, in fact, it amounted to an interview of a private citizen, or an interview, a private interview of an individual that had an important position within this case. Clearly, this was during the... Now, are you saying that's improper procedure to the issuance of an overhear order? I would assert that, yes. What would you say, where do you think the information in an overhear order comes from? Well, I would think that if you were to put it in normally, it comes in into a sworn complaint, a sworn affidavit. And then you've got something that defense counsel or the other side can look at. They can determine, okay, this is what we have. This is what was given to the judge. Based on that, he can make those decisions. You're talking about the issuance of an overhear order. Correct. Okay. I'm asking just about that. Correct. And I'm saying that in an overhear, typically, and in this case it was, too. It was actually supplemented. It was supplemented to the record where the complaint was actually filled out and tended to this court. It was filled out and signed by this victim, Natalie Porter. Okay. So that's typically the way it happens where you've actually got a document where a judge can take a warrant. Well, it's just the same as a warrant procedure. Exactly. Exactly right. That's what we're really dealing with here. Exactly. A trial, judge, and a warrant procedure. Normally, it comes in with the officers with some statements or testimony. Of course, no testimony. Exactly right. And that's all I'm saying, Your Honor, is that in a normal situation, you certainly have an officer going in there saying, here's the facts of the case. Here is the complaint that I'm tendering to you that's signed. I would request an overhear. And you don't bring in the witness who would testify. They don't testify. They just talk. And maybe there's a colloquy back and forth. Maybe there isn't. We don't know because it wasn't transcribed. We don't know what went back and forth between the officer and the person. Well, there's actually no problem with that except for what you're going into the next statement, next step is saying that person then should not sit in judgment of the case. That's what you're saying. That's correct. In a nutshell. Right. That's correct. And my only position in that is I'm not even suggesting Judge Steins can't set that aside. What I'm suggesting is that it now immediately ties the hands of a defense attorney, in particular this defense attorney, that if there was any inconsistencies between what was stated by the witness, a critical witness in this case, if there's any inconsistency with what she said there and what she said on the stand, it potentially makes him a witness. And I'm not suggesting that he's a bad judge. All I'm suggesting is that he took that away. He took the possibility of a rebuttal witness away from the defense in that situation because the rebuttal witness would have been him. There was nothing he could do. And there's an easy way around this. Obviously, he could have recused himself. I mean, that would have been the easiest. The other way is put it on the record. You know, if you're going to bring somebody in, especially a witness, put it on the record. Tender it to the defense. Now we've resolved all problems. We don't need a rebuttal witness. We've got her on the record. We've got that witness on the record. So we can do that. All I'm suggesting, Your Honor, is that it got rid of the possibility of a rebuttal witness, which in this case could have been absolutely critical because she was the major witness in this entire transaction, this entire case. She was the main witness. The next thing I'd like to go into briefly, and this is a little longer, and that's the eavesdropping statute. And I know that we've gone into somewhat detail in the briefs, but I'd like to go into it just very briefly. You know that the statute and its requirements are to be strictly construed. That's what the statute says, or that's what the case law has interpreted it to say. However, not all violations should necessitate the suppression of an overhear, which makes perfect sense to me. But the suppression will actually depend on three items, and that was stated in People v. Rope, which I believe you have in the briefs, which is citing People v. Nieves. The first one was the safeguard central to the legislative scheme of preventing abuse. The second one was the purpose of the procedure satisfied despite the error. And the last one was a statutory requirement deliberately ignored with the state gaining an advantage. Well, first let me go over very briefly the errors that were made in this eavesdropping statute. Number one, according to Section 108A-8A, defendant must be notified within 90 days after expiration of the overhear order. Statute says reasonable time, but, and I quote, not later than 90 days. And it doesn't say, and I don't mean to be glib here, it doesn't say do the best you can. I hope it works out for you. It says, but not later than 90 days. It's a specific order by the legislature for obvious reasons. So we've got an overhear which expired on June 14th of 2008. 90 days after that, September 14th, 2008, defendant was notified on October 7th of 2008. So it's a violation. Now, I am not here suggesting that is the world's worst violation. I am not suggesting that at all, and if that was the only violation, I would say clearly that's not enough for which would lead to a suppression of the overhear. It's just not that substantial, other than it was a clear violation. I mean, there's no question about it. The legislature put that in there for a reason, and it clearly was violated. But I'm not suggesting that was so egregious that we should suppress the overhear based on that. But let's go on, because that's the first of a couple of problems that this overhear application had,  Section 108A-8C, 10-day notice, or you can't use the overhear at trial. That's the big one. That is the big one because nothing in the record to indicate that notice was given. There was a recording that was tended, no question about it. They tendered the CD, but nothing else consistent with the statute. The only time it was in the record was, frankly, when the state supplemented the record for appeal. Then they put in the complaint, the complaint for an overhear. So what I would ask, Your Honors, is what would you expect a reasonable attorney to do at the time when he was not notified outside of that 10-day period? I'll tell you what a reasonable attorney would do. He would say, looks like the state's not going to use the overhear. They didn't give me notification. I know they know the law. I would assume they are not going to use the overhear. If it was me, I'd probably say, I'm not even going to listen to the overhear again because I know they're not going to use it until suddenly they get into trial and they trot out the overhear. They trot out the CD and they say, let's go, let's play the CD because we are going to use it at trial, which will bring me to the ineffective assistance because the trial attorney said nothing. In fact, I think he had no objection to the overhear going into evidence. But that's where we use the quote in our appellate document, trial by ambush. A reasonable attorney would say they are not going to use this because they consciously decided not to comply with that 10-day rule. Then they bring it out at the very end. Violation, no question about it, it was a violation. The third issue and the last issue is under Section 108.8.7. The recording and documents shall promptly be sealed. The eavesdrop order ended on June 14, 2008, and the order to seal was entered on September 18, 2008, more than 90 days afterwards. Obviously, there was no immediacy involved in that. After the finalization of the eavesdrop order, so everything was done, they had it on a CD, and for 90 days, actually in excess of 90 days, they didn't take it to the place where it was supposed to go. They didn't get it sealed. I would assert that's a clear violation of the requirement of that. It's immediate, and there's clear reasons for that immediacy because, you know, the possibility of tampering, the chain of evidence issue. We've got an issue where for over 90 days, that CD was somewhere. And I don't know where it was, and you don't know where it was. It was probably at some officer's desk or in the backseat of somebody's car or back in their, I have no idea. But clearly, it wasn't sealed. That's the important thing is it wasn't sealed. So if you had one of these issues, it's probably not sufficient to suppress it. But if you've got three of these issues, and all three of them, when they are combined, are critical, I think you get to the point where you say, you know what? They just haven't complied with the intent and the letter of the law of the statute. And that's what I'm asking for today is that we look at those as it relates to the ROPE requirements, and I believe they should have been suppressed then. I believe they should be suppressed in the future if this matter is ever tried again. Under ROPE, the requirements for suppressions, number one, are the safeguards central to the legislative scheme of preventing abuse. I would assert all three violations are central to the legislative scheme of preventing abuse, the 90-day notification issue, the 10-day notice for use of trial, and the immediate sealing. All of those clearly are there for a reason. They're there for the reason of safeguarding the legislative scheme of preventing abuse, not mere insubstantial violations. We've got reasonable notification issues. We've got a notice of use of trial issue, and we've got the potential tampering or chain of custody issue. All three of those clearly point to that first area of the ROPE requirements. The second issue, were the purposes of the procedure satisfied despite the errors? Number one, the 90-day notification, that's a close one. It was probably satisfied, you know, because they got the CD. We're not arguing that. That was one of the first things they got was a CD during the discovery process. Now, they didn't get the other stuff. They didn't get the complaint along with it and some of the other things that they should have gotten. But I'm not going to stand here and argue that, you know, that one issue should be sufficient for suppression. It is one of the issues that you should take into account. The 10-day notice, there is no question in my mind that that's not at all satisfied. A reasonable person would assume the state is not going to use that over here because it didn't comply with the requirement that specifically says you better turn over these following items. And if you don't turn them over, you can't use them at trial. If you didn't turn them over, a reasonable attorney is going to say, that's great. They're not going to use them in trial. Let's swear in the first witness. And the third one, immediately sealing again. Clearly, that was not satisfied. The intent of the statute was not complied with in that one. So we have at least two of the three violations, and arguably even the third one, which is the 90-day rule, that did not satisfy the purpose of the procedures. And even absent those errors, they were still complied with. Clearly, they weren't. So the last one. Thank you. The last one. I'll go fast. Was the statute deliberately ignored and did the state gain an advantage? I'm not saying that the errors were done maliciously. I'm not saying that anybody came in and said, let's get together and let's trick these guys. That wasn't the case. But I would state that it was done deliberately. They knew the law. They knew the 90-day requirement, and they violated it. They knew the 10-day rule. It was violated. They knew the need for the immediacy of tendering it to the judge, and it wasn't done. So without question, the violations gave the state an advantage, none more so than the 10-day violation. And that clearly gave them an advantage, walking into trial, assuming that you're not going to hear that over here, and then suddenly they trot out the CD and say, let's listen to the overhear. Clearly that was a violation. So when you take all of those into account, the overhear, I would assert, should have been suppressed, and it should be suppressed down the road if this matter ever goes back. The last thing I want to touch base on very quickly, and I know I'm just about running out of time, ineffective assistance, and I'm not going to go over all the details. I would assert that some of the things that I brought up under the last area of the eavesdropping statute, clearly if there was an attorney that was on top of his game, he certainly wouldn't have posed no objection to the entry of the overhear. He would have said, you've got three issues. You didn't comply with any of them. Let's set the overhear aside and let's swear in the first witness. But for the admission of the overhear and some of the other errors which were noted in our brief, there would have been a difference at the trial. Number one, in my humble opinion, there would have been a finding of not guilty. I also believe the trial would have been conducted in a completely different way than what it was conducted as. There would not be proof beyond a reasonable doubt. It led to a fundamentally unfair trial and a fundamentally unfair result, which leads us to the conclusion that the matter should be reversed and sent back. Thank you very much. Thank you, Mr. Heath. Mr. Austell, you may respond. Defendant has alleged initially that the trial judge considered improperly considered facts within his personal knowledge when he was involved in the eavesdropping procedure prior to trial. The record shows that the trial judge did not conduct a private interview with a victim or any other party prior to trial. He did not improperly consider facts within his personal knowledge or conduct a personal interview into the facts of his case, and he did not consider evidence that was not introduced at trial when he made his findings. Defendant asserted in his briefs that the effect of the victim testifying at the hearing and people's application for the overhearing device was a production of evidence. Well, there's no record that the victim ever testified at the eavesdropping hearing. It was Sergeant Hanson of the Sheriff's Department who actually did the testimony based on her information provided to her, to the sergeant prior to this hearing. And so he testified, and the state's attorney was present also, but there is no other record of anyone else present other than the judge in that eavesdropping procedure. So you're saying this was a fairly typical warrant application? Yes, I am saying that, sir. There was no interview with the alleged victim or anything of that nature? Not that the record indicates. In fact, the record does indicate just those three people were present, the state's attorney or one of his assistants, Sergeant Hanson, did the testimony, and of course the judge was present. But there is no other record that anyone else, especially the victim, was present at that actual hearing. The people in their brief equated this basically with, we spoke about the Thomas Court saying that a judge is not required to recuse himself whenever he has knowledge of or contact or interest in a case over which he's presiding. The Supreme Court in Larkin found that due process is not violated when a trial judge presides over a criminal trial after the judge has found probable cause to issue a search warrant. Then we have another case in Antwan, the first district, found that a judge is not required to recuse himself from a trial after presiding over warrant proceedings. And we're saying that this is the same type of proceeding. You get some preliminary information to see if you can move forward with the next step of the process. This is part of the investigatory procedure. It's not even part of the trial procedure yet. It may never even get to trial. This is just the eavesdropping issuance at this time. Even when the defendants motioned for a new trial, the trial judge said he had no separate memory of who was present at the hearing even. And he did say that he would have reviewed the recording of the overhear conversation to make sure it conformed with the application. And the people note that the recording was introduced and played at trial. Therefore, the recording did not contain any facts. Again, as a result of any investigation by the trial judge or any independent investigation by the trial judge, it was evidence that was offered specifically at trial. And it was a stipulated joint exhibit offered by both the defense counsel and the people. So the defense counsel had this material in advance, knew that it contained, and operated it as part of the joint exhibit. And people are asking this court to find that the trial judge was not required to recuse himself in this manner. Because basically, anytime a judge would hear a preliminary matter, then they would have to recuse themselves from the trial. And we don't think that would be a benefit to the court system in general. The defendant went on speaking about the overhear procedure itself, a different section. The 108A, 8A, defendant claims that was violated and that the defendant was not given notice of the overhear procedure within 90 days. Statutory period for doing so. People conceded in their brief that there was no personal service on the defendant within 90 days. The sheriff did serve the notice on defendant after that period of time. However, the defendant's attorney was provided with a notice of the overhear, a transcript of the overhear, the actual CD recordings of the overhear and related documents through the people's disclosure and supplemental disclosure. And this disclosure was within 30 days of the end of the overhear period. So the defendant had been provided with notice through those materials provided through his attorney in discovery. And this court in Bradley stated that it's been determined that the purpose of the notice provisions of section 108A, 8A, to make the defendant aware of conversations overheard and enable him to make appropriate motions to suppress the contents, is satisfied when the people give notice pursuant to discovery procedures. And that, of course, did happen here. The defendant also alleges that the written overhear application and trial judge's order authorizing the overhear were not provided to him within days of trial as is required under 108A, 8C. The defendant asserts that people never furnished those materials to him. But there's nothing in the record that even implies that the defendant or defense counsel did not receive copies of the written application for eavesdropping device or the trial judge's order authorizing its use. The fact that the recordings were offered into evidence as a stipulated joint exhibit strongly suggests that the statutory mandates were followed. At the hearing on the defendant's motion for a new trial, post-trial counsel argued that trial counsel was ineffective for allowing in evidence of the overhear. However, he never argued that the overhear was improperly obtained or that the statutory procedure had not been followed. So at no point during the trial proceedings has anyone said there's a problem anywhere with this 10-day notice. It's never raised. They obviously knew of the overhear proceedings. Post-trial counsel raised it in his motion for a new trial and argued it. But to the people, it's really unimaginable that the trial counsel and post-trial counsel both would have failed to raise this issue had it been apparent at the time. And also this issue of the 10-day rule that it was not adhered to was not raised in defendant's main brief on appeal. So the people submit that the defendant has failed in his burden to provide any positive record evidence that the statutory procedures were not followed in this case. Sorry, Your Honors, my page is slightly over. Yes, the defendant also asserted that the overhear recordings were not sealed within a reasonable time after the overhear pursuant to Section 108A7. And that they were not sealed immediately upon expiration of the overhear period. As noted in the people's supplemental brief, the statute only requires that the overhear recordings be immediately returned to the trial judge. And that the purpose of this is to preserve the integrity of the recordings and prevent tampering. The Sehausen Court stated, quote, the concept of immediacy refers to the immediate return of the tapes to the court and not to the immediate review of those tapes. And the defendant did point out that people miscited in this. The people note that at page eight of the supplemental brief, we invertedly cited to page 764 of Sehausen. The quote is actually on page 763, two sentences above 764. We apologize for the error. So the cite would be 193 LF 3rd 754 at 763. And we need to note that the victim, who was the second party recorded on the overhear, testified that she had listened to the CD containing the overhear recordings. And that they were accurate recordings of the conversations. This is the same CD that was received into evidence at trial. And the defendant did not challenge the accuracy of the CD's contents at that time. And thus the people submit that the record clearly shows that the CD had not been tampered with. And the trial judge then ordered those recordings sealed on September 4th, 2008. And people submit that it was likely that they were physically taken into the custody of the Whiteside County Sheriff's Department at that time as ordered. And there is no record to the contrary. Thus the people submit that the recordings were properly sealed after the trial judge had completed his review. The defendant also raised an allegation post-trial in here that the trial counsel was ineffective. And asserted as his grounds that the trial counsel failed to challenge the alleged lack of a written application for the overhear device. Failed to challenge the overhear evidence. And failed to file a motion for the substitution of judge. As we've already talked about the substitution of judge. We don't feel that that would have been an appropriate motion to raise. Because there was no particular grounds for substitution of the judge. He had not participated in any way that would be cause for recusal. And the judge even addressed this in post-trial proceedings. And said essentially he had no ill feelings toward the defendant. He had not seen any other evidence. He had only seen what was presented to him at that preliminary eavesdropping hearing. And so he felt that he was right not to recuse himself in this matter. Now the defendant also asserted in his briefs that if it wasn't for the overhear evidence. It was unlikely that the defendant would have been found guilty. The people submit that the overhear evidence was not significant to the trial judge's determination in this case. And that he considered the victim's detailed testimony in trial to be the most conclusive evidence against the defendant. The trial judge described the overhear evidence as ambiguous. He expressly found that the defendant made no specific admissions during the recorded conversations. And additionally, it's clear from the comments that the trial judge made when he again discussed his reasoning during the hearing of the defendant's motion for the new trial. That the overhear evidence was not material to proving the elements of the charge. He found that the victim's testimony is credible. And a detailed testimony that he found to be most probative of the elements. Which did not include any kind of citation to the overhear evidence. So people submit that the trial counsel is not ineffective for failing to challenge the overhear evidence. When it appears that it was a matter of trial strategy for him to participate in the inclusion of that evidence into trial. People will stand on their brief for any other further argument. If you have any questions of me. I don't believe we do. Thank you, Your Honor. Thank you, Mr. Austell. Mr. Keefe, you may reply. It's very early for you, Your Honor. You had no questions for him. I'm a little nervous. He was very convincing. Your Honor, what about this application hearing? The application process is not a hearing. You were saying somebody else was there and he's saying no. And I'm glad you brought that up. Because in the police reports, it clearly states, and I believe that it's also quoted in the first appellate court brief. The police report is quoted as saying that Natalie Porter testified in front of Judge Steins in the application for that. I am not convinced that is a matter of record. On the police report, clearly the trial counsel had it. Should he have brought it up? I would assert absolutely he should have brought it up. So it brings into question, I guess in my humble opinion, two of the issues. Number one is that it would be a reason for him to recuse himself from that whole argument, but it would also bring up the ineffective assistance argument that you're looking at a police report and it's saying this person just went in front of a judge and, frankly, the same judge that is carrying the case now testified in front of him or I think the word was testified in front of him. And you don't take the next step. The next step of either, number one, asking for an SOJ, a substitutional judge, or asking that he recuse himself or bring it up in cross-examination or bring it up as a witness or something to bring the issue to the forefront. And that wasn't done. I don't like the fact that this is the first time we have to bring it up to your honors. It's inappropriate that we would have to bring that up at this time. But the only reason we have to bring it up at this time is because trial counsel didn't bring it up for one reason or another. And, once again, I cast no subversions even on him. He's a very fine attorney. But there were some things that just didn't happen that should have happened, which I believe lead to the final conclusion that but for what he did or what he didn't do, the outcome would have been changed, and it led to an unfair resolution to this case. Now, opposing counsel saying, no, that's not necessarily the case. I know. How do you respond to that? Well, I would assert that I can show him down here. I can show him the police report where it says specifically that she testified at the request for an overhear.  No, but I'm talking about in terms of her testimony versus how the fact finder dealt with the overhear, with it saying it's ambiguous, there's really not, opposing counsel is saying, there's not much weight granted to that. Different, and I would assert that the big points, he is correct. She tells the same story from the stand somewhat consistent with what was obtained in the overhear. However, not completely. There are discrepancies. There are differences. Could an attorney have made hay with the discrepancies? I would assert, yes, you certainly could have. Without the overhear, I would think it is a completely different situation, and I think that you had literally one witness in this case, and if you have one witness and you can impeach credibility or you can show inconsistent statements or you can show there are issues with that one witness, clearly that would be a difference maker in a case such as this. Because you want to keep the overhear out. Exactly. Now you're saying, well, the overhear is useful to me. Not necessarily. I would love to have my cake and eat it, too. Right. But without the overhear, I believe that there was enough evidence and enough ability in the cross-examination of that witness with nothing to back her up, including the overhear, that it would have been a different outcome. Any other questions I would ask?  Very good. Thank you, Your Honors. Thank you, Mr. Heath, and thank you, Mr. Ossoff, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue. The court will stand.